**TRUSTEES OF the BUILDING SERVICE 32B–J PENSION, HEALTH AND ANNUITY FUNDS, Plaintiff,**

v.

**HUDSON SERVICE CORP.; Citywide Service Corp.; J. Barry Richman; and Marc Giacoia, Defendants.**

**No. 91 Civ. 7083 (SWK).**

United States District Court, S.D. New York.

Dec. 16, 1994.

---

**634**

Manning, Raab, Dealy & Sturm by Ira A. Sturm, New York City, for plaintiff.

Lloyd Somer, New York City, for defendants Hudson Service Corp. and Marc Giacoia.

Richard A. Medina, New York City, for defendants Citywide Service Corp. and J. Barry Richman.

1. Unless otherwise indicated, the following statement of undisputed facts is derived from the parties' 3(g) statements; *Hudson Serv. Corp. v. Benova,* Index No. 21132/91 (N.Y.Sup.Ct.1993), annexed to the Affidavit of Marc Giacoia, sworn to on Jan. 11, 1994; and *Citywide Serv. Corp. and*

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this action arising out of an employer's alleged failure to make required payments to certain employee benefit funds, brought pursuant to §§ 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1132(a)(3) & 1145 ("ERISA"), and § 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185, defendants J. Barry Richman ("Richman") and Mark Giacoia ("Giacoia") move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the complaint against them. Plaintiff Trustees of the Building Service 32B–J Pension, Health and Annuity Funds ("Trustees") opposes the motion and cross-moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment against all defendants. For the reasons set forth below, both motions are denied.

## BACKGROUND [1]

### I. Citywide

Between 1984 and October 1991, defendant Citywide Service Corp. ("Citywide") was a cleaning contractor in the business of providing commercial cleaning and maintenance services to buildings in New York City. Defendant Richman was Citywide's president and sole shareholder.

Citywide was a party to two collective bargaining agreements (the "collective bargaining agreements") with Local 32B, a labor organization representing approximately 70,000 members, including cleaners, porters, handymen, doormen, elevator operators, superintendents and security guards. The collective bargaining agreements, covering calendar years 1990 through 1992, required Citywide to pay Local 32B members specified wages and to provide certain benefits such as paid holidays and vacations. Additionally, the collective bargaining agreements required Citywide to make monetary contri-

*Its Alter Ego Hudson Serv. Corp.,* decision of the Nat'l Labor Relations Bd. (1994) (the "NLRB Decision"), annexed to Plaintiff's Exhibits in Support of its Cross–Motion for Summary Judgment.

butions to the Building Service 32B–J Pension, Health and Annuity Funds (the "Local 32B Funds") in the amount of approximately $5,000 per employee per year.

In 1990, due to the recession and the loss of several accounts, Citywide began to experience financial losses. In February 1991, upon receiving notice of legal action by Trustees, Richman learned that Citywide was indebted to the Local 32B Funds in excess of $300,000. After reviewing the matter, Richman determined that Citywide's bookkeeper unilaterally had decided to cease making payments to the Local 32B Funds several months earlier without his knowledge. Nonetheless, Richman neither paid the amount in arrears nor resumed making further payments. Moreover, despite Citywide's debts and financial difficulties, Richman drew approximately $559,000 in salary between 1990 and 1991.

In early 1991, due to Citywide's financial difficulties and the problems with the Local 32B Funds, Richman decided to close Citywide. Richman informed Giacoia, a Citywide employee since 1984 and vice-president since 1988, that the company would close at the end of the year and that he should seek alternative employment. At that time, Giacoia told Richman that he intended to open his own cleaning contracting business.

## II. The Formation of Hudson

In May 1991, defendant Hudson Service Corp. ("Hudson") was incorporated with Giacoia as its president and sole shareholder. Richman was involved in Hudson's formation in several respects. First, Giacoia used Citywide's attorney and accountant, Paul Sessler, as his attorney for incorporation purposes. Second, the certificate of incorporation named an associate of Richman as one of Hudson's directors. Third, financing for Hudson's start-up was provided by Richman's wife, who orally agreed to lend Giacoia $60,000 without executing a promissory note.[2] Fourth, Citywide defrayed Hudson's start-up costs by paying Hudson's first week

payroll. Fifth, Richman waived the non-competition clause in Citywide's employment contract with Giacoia so that he could commence business operations at Hudson. Sixth, when Citywide ceased operations in October 1991, Richman gave severance pay to Giacoia in the amount of $9,000.[3] Finally, Richman kept in constant communication with Giacoia during the time that Hudson began operations. Specifically, during the period immediately proceeding Citywide's closing and Hudson's opening in late 1991, Richman spoke with Giacoia on a special telephone line between three and five times each day. Thereafter, Richman continued to speak to Giacoia approximately one to three times per week.

In August 1991, Giacoia left Citywide and commenced operations at Hudson. In September 1991, Giacoia reached an agreement with Local 143, a competitor of Local 32B, pursuant to which Hudson's workers would receive significantly lower wages and benefits than required under the collective bargaining agreements with Local 32B. Hudson did not hire any Citywide employees who were members of Local 32B.

Hudson did, however, hire many of Citywide's non-Local 32B office employees, including Citywide's computer operator, bookkeeper, operations manager, supervisory personnel and the entire Citywide sales staff. The sales staff began soliciting Citywide accounts for Hudson while still in the employ of Citywide, leading to Hudson's acquisition of approximately eighty percent of Citywide's accounts. While Richman claims that he was unaware that his sales staff was soliciting business for Hudson, Giacoia admits that Richman and he had an understanding that the sales staff would engage in the solicitation of Citywide's business for Hudson. Although Richman received compensation for the sale of two smaller accounts to third parties, he received no payment for the accounts acquired by Hudson.

Hudson obtained much of its equipment and supplies from Citywide without compen-

---

**2.** Giacoia later repaid the loan by withdrawing funds from Hudson, depositing them in his personal account and writing a personal check to Richman's wife.

**3.** Giacoia was the only Citywide employee to receive severance pay.

sation. Citywide's vacuum cleaners, cleaning equipment and supplies were given directly to Hudson and Hudson used Citywide's vans to service Hudson's accounts. Citywide's office was disassembled and the furniture and equipment moved to Hudson's new office. Citywide provided Hudson with funds to pay for Hudson's purchase of air conditioners, a facsimile machine and other office supplies. The computer system, billing procedures and customer identification numbers used at Citywide were transferred directly to Hudson.

### III. The State and NLRB Proceedings

In August 1991, Local 32B commenced an arbitration proceeding against Citywide alleging, in part, that Citywide and Hudson were "alter egos" that acted in concert to violate the terms and conditions of the collective bargaining agreements. Thereafter, Hudson brought an order to show cause in New York State Supreme Court to stay the arbitration proceeding, resulting in a stay pending resolution after a hearing.

On January 14, 1993, trial commenced in the state court and, on September 22, 1993, the court vacated the stay, concluding that, "for the purpose of the arbitration, Hudson is the alter ego of Citywide." *Hudson Serv. Corp. v. Benova*, Index No. 21152/91 (N.Y.Sup.Ct.1993). In reaching this decision, the court determined that:

> Richman's conduct in relation to Giacoia cannot be explained solely on the basis of loyalty and friendship. The failure to obtain a note or writing memorializing the $60,000 loan from his wife, the use of cash transfers and unexplained checks, a windfall $9000 severance payment to Giacoia, the transfer of office, equipment, computers, software, office procedures, codes and forms, the failure to attempt to sell the business—all without apparent economic benefit—and the pattern of telephone calls between Richman and Giacoia on a private line demonstrate a puppet master who

fashioned a marionette and continued to pull its strings.

*Id.*

While the state action was pending, several former Citywide employees filed unfair labor practice charges with the National Labor Relations Board (the "NLRB"). After conducting its own hearing and reviewing the record from the state court proceeding, the administrative law judge determined, *inter alia,* that Hudson was the alter ego of Citywide. *See* NLRB Decision at 34. Further, the judge found that "[i]t is clear that Richman devised a plan to continue operation[s] through Hudson with a new, more acceptable union, and make it appear that Citywide was closing its operations." *Id.* at 21. The judge ordered Citywide, Hudson and its principals to "cease and desist" from violating the labor rights of Local 32B members. *Id.* at 35–38.

### IV. The Present Action

On October 21, 1991, Trustees commenced the present action, alleging that defendants' activities constitute a violation of ERISA § 515. Specifically, Trustees seeks reimbursement for unpaid contributions to the Local 32B Funds plus interest, liquidated damages, attorney's fees and costs from Hudson (First Claim for Relief), Citywide (Second Claim for Relief), Richman (Third Claim for Relief) and Giacoia (Fourth Claim for Relief). *See* Complaint, at ¶¶ 34–47.

Defendants Richman and Giacoia now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the complaint against them. Trustees opposes the motion and cross-moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment against all defendants.[4] For the reasons that follow, both motions are denied.

### DISCUSSION

#### I. Standard of Law

 Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment

---

4. Although Trustees states that its cross-motion is against all four defendants, its motion papers only address the individual liability of Richman and Giacoia. Moreover, Trustees expressly states that "the remaining question before this court is whether the corporate principles are individually liable for the damages." *See* Trustees' Memorandum of Law in Opposition to Defendants' Motion and in Support of its Cross-Motion, at 3 n. 1. Accordingly, the Court will not address Trustees' motion with respect to Citywide and Hudson.

is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and may discharge this burden by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The nonmoving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

■ The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987); *Eastway Constr. Corp. v. New York*, 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. at 158–59, 90 S.Ct. at 1608–09; *Gallo v. Prudential Residential Serv.*, 22 F.3d 1219, 1223 (2d Cir.1994). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *see Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 12–15 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ To determine whether the moving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.*, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of summary judgment. *See, e.g., Knight v. United States Fire Ins. Co.*, 804 F.2d at 11–12.

■ Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to establish his or her burden under Rule 56. *Celotex Corp. v. Catrett*, 477 U.S. at 330 & n. 2, 106 S.Ct. at 2556 & n. 2 (Brennan, J., dissenting). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

## II. Liability of Richman and Giacoia

Defendants argue that Richman and Giacoia should not be held liable as individuals for Citywide's alleged failure to contribute to the Local 32B funds. In brief, defendants maintain that Richman and Giacoia cannot be held liable solely on the basis of their status as officers, directors and shareholders of a corporation that breaches its ERISA trust fund contribution obligations. In opposition,

Trustees claims that limits on individual liability are not absolute under ERISA and that the present case requires that Richman and Giacoia be held accountable for the actions of Citywide and Hudson. Specifically, Trustees argues that Richman and Giacoia should be held liable based on: (1) defendants' fraudulent conduct; or (2) the corporations' status as alter egos of Richman and Giacoia. For the reasons that follow, the Court finds that issues of fact preclude summary judgment in favor of either party.

As a general rule, officers, directors and shareholders are not liable for deficiencies in corporate ERISA contributions solely by virtue of the individual's position in the corporation. *Sasso v. Cervoni,* 985 F.2d 49, 50 (2d Cir.), *cert. denied, Bourgal v. Cervoni,* — U.S. —, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993). Under "special circumstances," however, "the imposition of personal liability for a corporation's ERISA obligations" may be warranted. *Id.* These "special circumstances" include: (1) knowingly participating in a fiduciary's breach of ERISA trust obligations; (2) conspiring to divert ERISA funds for personal benefit; (3) intermingling personal and corporate assets; (4) engaging in fraudulent conduct; or (5) where the individual is in fact the corporation or the corporation's alter ego. *Id.* at 50–51; *Hardy v. Kaszycki & Sons Contractors, Inc.,* 870 F.Supp. 489, 495–96 (S.D.N.Y.1994); *McGuinness v. Marvin Hammerman, Inc.,* No. 89 Civ. 2900, 1994 WL 172403, *2–3, 1994 U.S.Dist.LEXIS 5718, at *8 (S.D.N.Y. May 4, 1994).

## A. Fraudulent Conduct

To determine whether a corporate officer should be held personally liable based on fraudulent conduct, the court must make a two-step inquiry. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo,* 35 F.3d 29, 33 (2d Cir.1994); *Solomon v. R. Mignon & Sons, Inc.,* No. 94 Civ. 1344, 1994 WL 538617, *2, 1994 U.S.Dist.LEXIS 14024, at *4 (S.D.N.Y. Oct. 3, 1994). First, the court must determine whether the individual is a "controlling corporate official." *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo,* 35 F.3d at 33. In making this determination, the court must "examine the officer's actual role in the company's affairs and relationship to the company's wrongdoing." *Id.* Second, the plaintiff must establish the existence of all of the common law elements of fraud, which include: (1) a material false representation or omission of an existing fact; (2) knowledge of the falsity; (3) intent to defraud; (4) reasonable reliance; and (5) damages. *Id.* (citing *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 276 (2d Cir.1992)).

It is undisputed that Richman exercised complete control over Citywide as its president and sole shareholder. There is also ample evidence to suggest that he continued to exercise significant control over Citywide's accounts after Citywide had ceased operations through his relationship with Giacoia and Hudson. Richman's continued role at Hudson is evidenced by the wholesale transfer of equipment, supplies and clients to Hudson without compensation, the private telephone line installed between Giacoia and Richman after Richman allegedly left the cleaning contracting industry and the financial assistance that he and his family provided to Hudson from its inception. With respect to Giacoia, it is undisputed that he was an officer at Citywide and the president and sole shareholder of Hudson. Richman and Giacoia were heavily involved in the activities of Citywide and Hudson and were chiefly responsible for the creation of Hudson and the transfer of Citywide's business and assets. Accordingly, the Court finds that Trustees has established as a matter of law that Richman and Giacoia are "controlling corporate officials" under *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo,* 35 F.3d at 33.

Having established that Richman and Giacoia are "controlling corporate officials," Trustees must next prove that they engaged in fraudulent conduct. Although there is evidence that Richman and Giacoia conspired to avoid Citywide's ERISA obligations under the collective bargaining agreements with Local 32B, Trustees has not proved fraud as a matter of law. In particular, the Court finds that there is an issue of

fact with respect to the intent of Richman and Giacoia to defraud Local 32B out of the required pension fund contributions.

## B. Piercing the Corporate Veil

Trustees argues alternatively that the Court should pierce the corporate veil of Citywide and Hudson and hold Richman and Giacoia personally liable for the Local 32B Funds deficiencies. Again, the Court finds that, while there may be merit to Trustees' claim, summary judgment is inappropriate in the present case.

 In certain circumstances, the court may determine that the corporate veil should be pierced and the principals held accountable for the ERISA violations of the defaulting corporation. *Sasso v. Cervoni,* 985 F.2d at 51; *see also McGuinness v. Marvin Hammerman, Inc.,* 1994 WL 172403, at *3, 1994 U.S.Dist.LEXIS, at *8 (stating that "disregarding the corporate form" is a "special circumstance" that may warrant imposing individual liability). To determine whether the corporate veil insulates a corporate officer from liability under ERISA, the court should look to federal substantive law, although the court may consult state law for guidance. *Trustees of UIU Health and Welfare Fund v. New York Flame Proofing Co.,* 649 F.Supp. 843, 847 (S.D.N.Y.1986) (citing *Seymour v. Hull & Moreland Eng'g,* 605 F.2d 1105, 1109 (9th Cir.1979)), *rev'd on other grounds,* 828 F.2d 79 (2d Cir.1987). Under New York law, a court may pierce the corporate veil and subject a principal to personal liability either when the corporation has been used as an alter ego or where the principal has engaged in fraudulent conduct. *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.,* 909 F.2d 698, 703 (2d Cir.1990) (emphasis omitted); *see also Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,* 933 F.2d 131, 138 (2d Cir.1991) (stating that "[l]iability therefore may be predicated either upon a showing of fraud or upon complete control by the dominating [entity] that leads to a wrong against third parties").

 In determining whether a corporation is merely an alter ego of an individual, the court should consider a number of factors, including: (1) the absence of formalities that are part and parcel of the corporate existence; (2) inadequate capitalization; and (3) the use of corporate funds for personal rather than corporate purposes. *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,* 933 F.2d at 139; *see also Directors Guild of Am., Inc. v. Garrison Prods., Inc.,* 733 F.Supp. 755, 760 (S.D.N.Y. 1990) (citing *William Wrigley Jr. Co. v. Waters,* 890 F.2d 594, 600 (2d Cir.1989)).

 Trustees has not presented sufficient evidence from which the Court could conclude that Citywide and Hudson are the alter egos of Richman and Giacoia. There is no evidence that Citywide and Hudson failed to observe the formalities of corporate existence such as maintaining the corporate books and observing corporate procedures. Nor is there sufficient evidence that the corporations were inadequately capitalized or that Richman and Giacoia diverted corporate funds for personal use. Although Trustees strenuously argues that Hudson and Citywide are alter egos of each other, it fails to present evidence that the corporate entities are the alter egos of Richman and Giacoia. Accordingly, absent further evidence at trial, there is no basis for piercing the corporate veils of Citywide and Hudson and holding the principals liable on an alter ego theory.

 Nonetheless, as discussed above, the Court finds a question of fact as to whether Richman and Giacoia engaged in a fraudulent scheme designed to evade Citywide's ERISA obligations. If Trustees proves the elements of fraud at trial, the corporate veils of Citywide and Hudson could be pierced and Richman and Giacoia could be held liable as corporate officers. This would provide an independent basis for holding Richman and Giacoia personally liable for Citywide's failure to make the required contributions to the Local 32B Funds. Accordingly, as the fraud allegations raise an issue of fact, Trustees' motion for summary judgment based on the corporate veil theory is denied.

## CONCLUSION

For the reasons set forth above, Richman and Giacoia's motion, pursuant to Rule 56 of

the Federal Rules of Civil Procedure, for summary judgment dismissing the complaint against them is denied. Trustees' motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment is also denied. The parties are directed to appear at a pre-trial conference on January 25, 1995 at 2:00 P.M.

SO ORDERED.