Michael BOURGAL, John Probeyahn, Theodore King, Chester Broman, Ben Ciavolella, Jr., Frank Finkel, Joseph Ferrara and Aniello Madonna as Trustees and Fiduciaries of the Local 282 Welfare, Pension, Annuity and Job Training Trust Funds, Plaintiffs,

v.

ROBCO CONTRACTING ENTERPRISES, LTD., Ferraioli Industries, Inc., Danasal Equip. Corp., Roberta Defillipis, and Sal Ferraioli, Defendants.

No. CV 93–2664 (ADS).

United States District Court,
E.D. New York.

June 27, 1997.

Friedman & Levine by James R. Grisi, New York City, for Plaintiffs Michael Bourgal, John Probeyahn, Theodore King, Ches-ter Broman, Ben Ciavolella, Jr., Frank Finkel, Joseph Ferrara, Aniello Madonna.

Roger J. Bernstein, New York City, for Defendants Robco Contracting Enterprises, Ltd., Roberta Defilippis.

J. Jeffrey Weisenfeld, New York City, for Defendants Ferraioli Industries, Inc., Dana–Sal Equipment Corp., Sal Ferraioli.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This lawsuit arises as a result of the alleged failure of the defendants Robco Contracting Enterprises, Ltd. ("Robco"), Ferraioli Industries, Inc. ("Industries"), Dana–Sal Equipment Corp. ("Dana–Sal," the "corporate defendants"), Roberta Defilippis ("Defilippis") and Sal Ferraioli ("Ferraioli," the "individual defendants" collectively the "defendants"), to pay benefit contributions to the Local 282 Welfare, Pension, Annuity and Job Training Funds as required pursuant to the terms of the relevant collective bargaining agreement and trust agreement. The plaintiffs, Michael Bourgal, John Probeyahn, Theodore King, Chester Broman, Ben Ciavolella, Jr., Frank Finkel, Joseph Ferrara and Aniello Madonna (collectively the "plaintiffs" or the "Funds"), have brought this action as Trustees and Fiduciaries on behalf of the benefit funds pursuant to the Labor Management Relations Act, section 301, 29 U.S.C. § 185 and the Employee Retirement Income Security Act ("ERISA"), sections 502 and 515, 29 U.S.C. §§ 1132 and 1145.

Presently before the Court is the plaintiffs' motion for summary judgment pursuant to Fed.R.Civ.P. 56. According to the Funds, the corporate defendants are jointly and severally liable for delinquent benefits contributions plus interest and attorneys' fees "by virtue of their 'alter ego,' 'single employer' and/or 'double-breasted' relationship." Further, the plaintiffs assert that the individual defendants should be held personally liable for the contributions because they "attempted to defraud the Funds by, inter alia, use of the foregoing corporations." Only the defendants Robco and Defilippis have responded to the Funds' motion arguing that there are

sufficient issues of material fact to warrant denial of summary judgment.

## I. *Background*

### A. *The facts*

The Funds are employee benefit plans within the meaning of ERISA, 29 U.S.C. § 1002(3), and are maintained pursuant to the terms of collective bargaining agreements ("Agreement") between the Building Material Teamsters Local 282, affiliated with the International Brotherhood of Teamsters, AFL–CIO (the "Union") and various employers. The Funds are operated pursuant to the terms of the Agreement and an Agreement and Declarations of Trust (the "Trust Agreement") incorporated into the collective bargaining agreement by reference. The Trust Agreements set forth the rules under which the Funds are administered.

Robco and Dana–Sal are in the excavation business, transporting material such as dirt, debris and asphalt by truck, to and from construction sites. The parties disagree as to Industries' operations. The Funds contend that Industries is also in the excavation business. The defendants argue that Industries supplies "roll off" containers for rubbish removal, a separate enterprise. According to the Funds, all three corporate defendants maintained their offices at the same address, 23 Ash Street in Brooklyn, New York until August 1992 when Robco began dispatching trucks from a yard located in College Point, New York.

Defilippis is the president of Robco. Ferraioli is Defilippis's husband and is the president and chief executive officer of Industries and the only principal of Dana–Sal. He also runs the day to day operations of Robco, including managing labor relations and controlling payroll practices.

Robco was a signatory to the collective bargaining agreement with the Union for the period from July 1, 1991 through June 30, 1993. The Agreement bound Robco to the terms of the Trust Agreement which required Robco to submit monthly remittance reports regarding the hours worked by covered employees and the contributions owed to the Funds as a result. Industries was a party to an identical Agreement with the Union effective December 1, 1990 through June 30, 1993. Dana–Sal was not a party to the Agreement. From the effective date of its Agreement, Industries failed to supply any remittance reports to the Funds.

The Funds claim that the corporate defendants are operated as a single employer, alter egos and constitute a double breasted operation. According to the plaintiffs, Robco, Industries and Dana–Sal, shared common ownership, management and supervision, namely Ferraioli and Defilippis; shared common facilities and equipment; had interrelated operations; shared common customers; and maintained centralized labor relations. For example, the corporate defendants shared employees, such as Ralph Montchal and Tommy Tenza, who worked as dispatchers for Dana–Sal, Industries and Robco. In addition, covered employees who performed work for Robco were paid by all three corporate defendants. All three companies shared customers including companies known as "Cousins–Civetta," "New York Paving," "Pile Foundation Construction Co. Inc." and "Perez Interboro Asphalt Co., Inc." They also shared employees, and used their equipment on the same construction sites.

One example of the interrelationship between the corporate defendants is with respect to a contract between Robco and Perez Interboro Asphalt Co. to perform "unclassified excavation work on the 14th Street Reconstruction Project" in Manhattan. The contract was executed by Defilippis on behalf of Robco and included work covered by the collective bargaining agreement. Dump trucks bearing the name "Ferraioli Industries" or "Dana–Sal Equipment" were used to perform work on the 14th Street Reconstruction Project between July 2, 1991 and July 17, 1991. On July 17, 1991, those trucks were chased off the site by a shop steward. The same trucks appeared the next day with a new sign on the vehicles reading "Robco Contracting Enterprises, Ltd." The trucks were then used to perform the same work as before with some of the same drivers.

The Funds further assert that Defilippis and Ferraioli were responsible for the remittance reports upon which contribution pay-

ments are based. The Funds claim that Defilippis, upon the advice of Ferraioli, intentionally failed to report or underreported the hours of each of the employees listed in the remittance reports, and engaged in the practice of assigning Robco employees to the payrolls of Dana–Sal and Industries in order to avoid paying contributions.

The plaintiffs also claim that Defilippis and Ferraioli commingled their personal funds with the assets of the corporate defendants and diverted corporate assets for non-corporate uses. According to the Funds, the corporate defendants do not issue stock certificates to shareholders, do not maintain corporate bylaws, do not maintain shareholder meetings or board of directors meetings and do not maintain separate books and records.

On the other hand, the defendants Robco and Defilippis deny that the corporate defendants are maintained as a single employer or alter-egos. In support of their position, they claim that the companies were formed at different times, maintain different offices and have different functions. For example, as stated above, Robco is located in College Point, and Dana–Sal and Industries are located at 23 Ash Street in Brooklyn. Industries supplies " 'roll-off' containers for rubbish removal" as opposed to operating "excavation businesses" like Robco and Dana–Sal. Further, Robco was financed by Defilippis' family as opposed to Ferraioli, who only managed that company's "day-to day operations." Also, Robco's books and records were kept separately from Dana–Sal and Industries. According to Defilippis, she was not involved in any way with the operation of her husband's companies, Industries and Dana–Sal, although, as stated above, she confirms that Ferraioli was hired to operate Robco on a daily basis. Further, Defilippis denies defrauding the Funds "through knowing falsification of remittance reports." In preparing the reports she relied exclusively on information given to her by Ferraioli and Ralph Montchal, Robco's dispatcher.

## B. *Procedural history*

On June 15, 1993, the Funds filed their Complaint alleging five causes of action: (1) against Robco for failure to pay benefits contributions; (2) against Roberta Defilippis individually for fraudulently underreporting hours worked and making cash payments to employees in an effort to avoid paying benefits contributions; (3) against Robco, Industries and Dana–Sal as a single employer and alter egos such that Industries and Dana–Sal are jointly and severally liable for Robco's delinquent contributions; (4) against Robco for contributions based on employees of Dana–Sal for the period from July 1991 through December 1991, as a result of Dana–Sal's operation as a double breasted entity in violation of Robco's obligations under the collective bargaining agreement; and (5) against Ferraioli for intentionally causing Robco to underreport hours worked by the employees thereby causing underpayment of contributions to the Funds. On October 25, 1993, the defendants served their Answers denying liability.

On September 3, 1993, the Funds commenced discovery by serving Plaintiffs' First Request for Production of Documents upon Robco and Defillipis and simultaneously noticing the deposition of Defillipis for October 4, 1993. On October 4, 1993, Plaintiffs' First Request for Production of Documents was served on the remaining defendants. That day Ferraioli appeared at the deposition noticed for his wife. At this time, some records of Dana–Sal and Robco were produced. Ferraioli also represented that many of the records relating to Dana–Sal and Industries were taken by the United States Attorney's office for a related criminal investigation. However, he did state that he would obtain copies of these documents and turn them over to the Funds. No copies were ever produced.

During his deposition, Ferraioli stated that he was appearing on his own behalf. The deposition was eventually continued to October 7, 1993 and then adjourned at the defendant's request until October 18, 1993.

On January 4, 1994, at a status conference, United States Magistrate Judge Michael L. Orenstein set a pretrial conference for July

8, 1994, after discovery was to be completed. On June 24, 1994, the Funds wrote to the defendants regarding the inadequacies of responses to outstanding requests, including documents promised but never produced, and requesting the continuance of the depositions of the individual defendants. Defense counsel did not respond to this letter.

On July 8, 1994, the parties met with Judge Orenstein to address the defendants' responses to the Funds' discovery demands. Judge Orenstein ordered the defendants to produce and serve the documents demanded by July 25, 1994 and, over the defense counsel's objection, that Robco's accountant be deposed. The individual defendants were directed to appear for depositions on August 9 and 10, 1994.

On July 27, 1994 and July 29, 1994 the Funds received communications stating that the defendants were searching for additional documents. No documents were received from Dana–Sal, Industries and Ferraioli. In addition, counsel for Defillipis sent a letter stating that Defillipis had prepared a list of records she had found, as well as those she was unable to find, which list was allegedly enclosed. The list was not enclosed. The letter further stated that Defillipis gave the additional records to her husband to deliver to counsel. However, while the records were in her husband's car, allegedly the car was stolen.

On August 9, 1994, at their depositions, the individual defendants prevented the Funds from obtaining necessary information and evidence by invoking their Fifth Amendment privilege against self incrimination, the marital privilege and spousal immunity. On August 15, 1994, the plaintiffs notified the defendants that they would attempt to continue the depositions. By letter dated August 16, 1994, counsel for Robco objected to continuing the depositions. Based on these objections, and defense counsel's representations that Ferraioli and Defillipis intended to continue to invoke the aforementioned privileges, the parties' attorneys agreed that the Funds would submit a list of questions to the defendants. If the defendants chose to invoke the Fifth Amendment in response, they would prepare a stipulation to that effect.

On August 19, 1994, the questions were sent to Ferraioli and Defillipis. Again, the defendants did not respond.

On August 22, 1994, the Funds served a subpoena duces tecum on Robco's accountant David A. Fusco returnable on September 6, 1994. Robco objected to the date because it was a religious holiday. The plaintiffs offered four other alternative dates and the defendants objected to all of them. Three more dates were offered to Robco's counsel who, despite repeated assurances, never responded to this second proposal. Some documents however, were produced in response to the subpoena.

At an August 26, 1994 conference Judge Orenstein directed the defendants to respond to the questions contained in the plaintiffs' August 19, 1994 letter either at a deposition, in writing, or at trial. On November 14, 1994, at the request of the Funds, Judge Orenstein directed the defendants to respond to the outstanding questions in writing no later than November 30, 1994. On November 17, 1994, during telephone conversations among counsel, the defendants stated that they intended to disobey the Court's order.

On July 19, 1995, the Funds served the defendants with a 3(g) statement as a precursor to serving their motion for summary judgment. The defendants did not file a response. On October 12, 1995, a 3(g) conference was held before this Court. By letter dated November 28, 1995, defendant Ferraioli advised the Funds of his intent to default on the plaintiffs' motion for summary judgment. On March 22, 1996, the Funds filed their first motion for summary judgment.

On September 6, 1996, Defillipis made a letter application to defer resolution of the Funds' motion so that she could withdraw her invocation of her Fifth Amendment privilege and have her deposition completed. By order dated September 10, 1996, this Court granted the defendant's application in order to address this matter on its merits and discovery was reopened. On October 30, 1996, United States Magistrate Judge Viktor V. Pohorelsky directed that the Funds serve any document requests by November 15,

1996, and that any response would be served by December 9, 1996. Although the document request was served, in violation of Judge Pohorelsky's order, the defendants never responded.

On January 9, 1997, this Court directed that Defillipis appear for her deposition which was noticed for January 13, 1997. Defillipis failed to appear in violation of the Court order. On January 13, 1997 Defillipis's attorney advised the Court that she was ill and would provide medical documentation to the Court. On April 15, 1997, defense counsel advised the Court that he had obtained "information" to the contrary and requested that his January 13, 1997 letter be withdrawn.

## II. *Discussion*

### A. *Summary judgment standard*

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Terminate Control Corporation v. Horowitz,* 28 F.3d 1335, 1352 (2d Cir.1994) (quoting *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990)), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Institute for Shipboard Education v. Cigna Worldwide Insurance Co.,* 22 F.3d 414, 418 (2d Cir.1994); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990)(quoting Fed.R.Civ.P. 56(e); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990) ). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994); *Rattner v. Netburn,* 930 F.2d 204 (2d Cir.1991).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World,* 922 F.2d at 121. Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Fed. R.Civ.P. 56(c) and (e) provide that the non-moving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *United States v. Rem,* 38 F.3d 634 (2d Cir.1994).

Finally, when determining a motion for summary judgment, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994); *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership,* 912 F.2d 23, 27 (2d Cir.1990).

### B. *The plaintiffs' motion*

### 1. *Recovery of delinquent benefits contributions*

As a preliminary matter, the Court again notes that the defendants Dana–Sal, Industries and Ferraioli do not oppose the plaintiffs' motion. Accordingly, the Court's analysis applies only to the defendants Robco and Defilippis.

ERISA section 515 requires that employers who are signatories to collective bargaining agreements providing for qualified multiemployer benefit plans make the specified contributions. See 29 U.S.C. § 1145; *Greenblatt v. Delta Plumbing & Heating Corp.,* 68 F.3d 561, 568 (2d Cir.1995). ERISA section

502(f) provides federal jurisdiction over claims brought to enforce an employer's obligation to make the required contributions. *See* 29 U.S.C. § 1132(f); *Greenblatt,* 68 F.3d at 568.

In this case, the defendants do not contest that they are liable for contributions pursuant to the terms of the collective bargaining agreement. They do not raise any defenses to the validity of the Agreement or claim that the Funds are seeking contributions for work that is not covered. Rather, Robco and Defilippis present affidavit evidence that the corporate defendants are not alter egos of one another and do not constitute a single employer so as to create joint and several liability. Further, the individual defendants assert that they have not defrauded the Funds by knowingly manipulating and underreporting employees' hours to avoid contributions.

### 2. *The defendants' affidavits*

At the outset, the Court addresses the plaintiffs' argument that the defendants should not be permitted to submit affidavits in opposition to the motion for summary judgment based on their consistent abuse of the discovery process and manipulation of their Fifth Amendment privileges in order to avoid resolution of this litigation. As set forth above, the defendants have avoided producing almost any evidence during discovery by obstructing discovery in general and by invoking the Fifth Amendment privilege against self incrimination. After Defillipis was granted leave to withdraw her invocation of the privilege and continue with her deposition, she failed to appear in direct violation of this Court's order. In addition, the defendants have disobeyed several discovery orders of Judges Orenstein and Pohorelsky. The plaintiffs argue that as a result of this practice the defendants should be precluded from presenting evidence regarding these questions in opposition to their summary judgment motion.

In *United States v. Certain Real Property and Premises Known as 4003–4005 5th Ave., Brooklyn, N.Y. ("4003–4005"),* 55 F.3d 78 (2d Cir.1995), the appellant in a civil forfeiture case sought reversal of a district court order preventing him from withdraw-

ing his invocation of his Fifth Amendment privilege so that he could file an affidavit in opposition to the Government's motion for summary judgment. On appeal, the Second Circuit recognized that

> those who invoke the Fifth Amendment and those who oppose them—should be afforded every reasonable opportunity to litigate a civil case fully and because exercise of Fifth Amendment rights should not be made unnecessarily costly, ... courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege.

*Id.* at 83–84 (footnote and citation omitted). Factors to consider in arriving at the appropriate balance include the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to the opposing parties. The district court should generally "take a liberal view" toward applications to withdraw the privilege and testify so that a case may be adjudicated on its merits. *Id.* However, withdrawal of the privilege should not be permitted "carelessly." *Id.* Because invocation of the Fifth Amendment maybe used to hinder discovery and obstruct litigation, "trial courts must be especially alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate or gain an unfair advantage over opposing parties." *Id.* If "the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege." *Id.* at 85, citing, *In re Edmond,* 934 F.2d 1304, 1308–09 (4th Cir.1991); *United States v. Parcels of Land,* 903 F.2d 36, 42–46 (1st Cir.1990); *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 576–77 (1st Cir. 1989); *United States v. Talco Contractors Inc.,* 153 F.R.D. 501, 505–12 (W.D.N.Y.1994); *United States v. Sixty Thousand Dollars,* 763 F.Supp. 909, 913–14 (E.D.Mich.1991).

Applying these standards, the Second Circuit affirmed the decision of the district court

to bar withdrawal of the privilege so that the appellant could submit an affidavit in opposition to the Government's motion for summary judgment. In reaching this conclusion, the court relied on the fact that the appellant had "stonewalled" discovery by failing to answer interrogatories for over a year. When ordered to answer by the Magistrate Judge he did so in a limited fashion invoking the Fifth Amendment. When directed to supplement his answers, the appellant continued to invoke the privilege. Six months after the Government moved for summary judgment, the appellant indicated his desire to withdraw the privilege and submit to discovery. Based on these events, the Second Circuit determined that "the District Court appears to have been acting well within its discretion when it ruled that [the appellant] was to be prevented from submitting 'any material previously claimed to be [covered by his] Fifth Amendment privilege against self incrimination.'" *Id.* at 86, quoting, *United States v. Certain Real Property and Premises known as 4003–4005 Fifth Ave., Brooklyn, N.Y.,* 840 F.Supp. 6, 7–8 (E.D.N.Y.1993).

Similarly, in *United States v. Incorporated Village of Island Park,* 888 F.Supp. 419 (E.D.N.Y.1995), the defendants invoked their Fifth Amendment privileges during their depositions, but sought to submit affidavits in opposition to the Government's motion for summary judgment. In response to the Government's motion to strike the affidavits, Judge Glasser held:

> [i]n view of [the defendants] repeated invocation of their Fifth Amendment privilege at deposition, their "eleventh hour" attempt to avoid the consequences of asserting that privilege by submitting affidavits in opposition to the government's summary judgment motion constitutes an abuse of the discovery procedure which should not be permitted.

*Id.* at 431.

■ Consistent with these decisions, the Court now bars the defendants from creating issues of fact by submitting affidavits in support of their opposition to the Funds' motion for summary judgment. In an effort to reach the merits of this case, the Court has been more lenient with the defendants than

the district court in *4003–4005.* In this case, rather than prevent the defendants from withdrawing their Fifth Amendment privilege at the eleventh hour, after the plaintiffs filed their first summary judgment motion, the Court permitted withdrawal of the privilege and ordered Defillipis to appear and continue her deposition. Nevertheless, in direct contravention of this Court's order, she failed to appear and offered no valid excuse for her absence. In the Court's view, such conduct constitutes not only an abuse of the discovery process, but a disregard for the efforts of this Court to give the defendants an opportunity to present the merits of their case. As a result, the Court will not consider the affidavits of defendants Ferraioli and Defillipis in ruling on the Funds' motion for summary judgment.

The Court now turns to the merits of the Funds' motion.

### 3. Single employer and alter ego doctrines

■ The Funds attempt to hold all three corporate defendants liable for Robco's alleged delinquent benefits contributions under the single employer and alter ego doctrines. Determinations of both single employer and alter ego status constitute questions of fact. *Lihli Fashions Corp., Inc. v. NLRB,* 80 F.3d 743, 747 (2d Cir. 1996); *Goodman Piping Prods., Inc. v. NLRB,* 741 F.2d 10, 11 (2d Cir.1984). A single employer situation exists where nominally separate entities are actually part of a "single integrate enterprise." *Lihli Fashions Corp.,* 80 F.3d at 747; *Clinton's Ditch Coop. Co., Inc. v. NLRB,* 778 F.2d 132, 137 (2d Cir.1985), *cert. denied,* 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986) (internal citations and quotations omitted); *Mason Tenders Dist. Council Welfare Fund v. Kan Klean Indus., Inc.,* No. CIV. 92–7688(AGS), 1996 WL 447751, at *6 (S.D.N.Y. Aug.7, 1996) (applying the single employer standard in a case seeking recovery of delinquent benefit contributions). "The single employer standard is relevant when 'separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise.'"

*Clinton's Ditch Coop.*, 778 F.2d at 137, quoting, *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 402, 80 S.Ct. 441, 443, 4 L.Ed.2d 400 (1960). The factors to review when considering whether two entities constitute a single employer are inter-relation of operations, common management, centralized control of labor relations and common ownership. *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Serv. of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965); *Lihli Fashions Corp.*, 80 F.3d at 747; *Kan Klean Indus.*, at *6. No one factor is controlling and not every factor need be present. *Lihli*, 80 F.3d at 747. Further, in order to bind a non-signatory to the terms of a collective bargaining agreement, together both such entities must constitute part of an appropriate bargaining unit. *Id.*

 "The alter ego doctrine is designed to defeat attempts to avoid a company's union obligations through a sham transaction or technical change in operations." *Local 1, Amalgamated Lithographers v. Stearns & Beale, Inc.*, 812 F.2d 763, 772 (2d Cir.1987). The key factors to consider when making an alter ego determination are whether the enterprises under review have "substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Lihli Fashions Corp.*, 80 F.3d at 748, citing, *Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking Co.*, 944 F.2d 1037, 1046 (2d Cir.1991); *Goodman Piping Prods., Inc. v. NLRB*, 741 F.2d 10, 11 (2d Cir.1984). The test for the alter ego doctrine is conceptually distinct from the single employer doctrine, focusing on "the existence of a disguised continuance or an attempt to avoid obligations of a collective bargaining agreement through a sham transaction or technical change in operations." *Lihli Fashions Corp.*, 80 F.3d at 748; *Truck Drivers*, 944 F.2d at 1046.

 The Funds have produced sufficient evidence to establish that the corporate defendants constitute both a single employer and alter egos, as a matter of law. Although these tests generally warrant separate analysis, the evidence presented by the Funds is sufficient to satisfy both tests. With respect to common ownership, management and supervision, the Funds show that Defilippis is the president of Robco, but Ferraioli, Defilippis's husband controls the "day-to-day operations of Robco." In addition, Ferraioli owns and operates Dana–Sal and Industries and makes employment decisions for all three companies. Further, Ralph Montchal and Tom Tenza have acted as dispatchers for all three companies.

The Funds have also established that the corporate defendants share common facilities and equipment. For example, on the 14th Street Reconstruction Project, trucks bearing the name "Ferraioli Industries" and "Dana–Sal" were chased off the site, only to reappear redesignated with the name "Robco" with some of the same drivers. This is significant circumstantial evidence of both single employer and alter ego status. In addition, Dana–Sal rented trucks from Robco. Both Dana–Sal and Industries had the same address, 23 Ash Street in Brooklyn. Robco was also located at 23 Ash Street, until some time in 1991 or 1992 when it relocated to College Point, New York.

The corporate defendants also shared at least some of the same customers. For example Robco, Dana–Sal and Industries all provided their services to companies known as "Perez Interboro Asphalt," "Cousins–Civetta," and "New York Paving."

In addition, with respect to the single employer standards, the Court finds that the Funds have demonstrated the existence of an appropriate bargaining unit. The contributions sought are for the same job classification—truck driver—and for the same type of work—driving a dump truck to transport excavated material.

Finally, the Funds provide evidence of centralized labor relations. According to the plaintiffs' supporting papers, Ferraioli made the employment decisions, such as disciplining employees and granting promotions, for all three companies. Moreover, the corporate defendants employed the same truck drivers. Considering all of this evidence in its totality, the Court finds that the Funds have established that the corporate defen-

dants are jointly and severally liable for the allegedly delinquent benefits contributions as a single employer and alter egos. Accordingly, the plaintiffs' motion for summary judgment as to this issue is granted.

In reaching this conclusion, the Court notes that the defendants have produced some evidence in the form of affidavits that would tend to contradict the Funds' evidence regarding the applicability of single employer and alter ego doctrines. However, as set forth above, the Court declines to consider these affidavits as a result of the defendants dilatory tactics throughout this litigation. In addition, the Court notes that in their opposing memorandum of law, the defendants argue that an arbitrator has already determined that the corporate defendants do not constitute a single employer. However, the defendants did not annex a copy of the arbitrator's decision. Accordingly, the Court will not consider this alleged decision.

#### 4. *Individual liability*

■■■ The Funds also move for summary judgment against the individual defendants arguing that as officials and principals of the corporate defendants, Ferraioli and Defilippis "defraud[ed the] benefit funds through the submission of knowingly false remittance reports...." When considering whether corporate officers should be held personally liable for failure to make contributions based on fraudulent conduct, the court must make a two step inquiry. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 33 (2d Cir.1994); *Trustees of the Building Serv. 32B–J Pension, Health & Annuity Funds v. Hudson Serv. Corp.*, 871 F.Supp. 631, 638 (S.D.N.Y. 1994). First, the court must consider whether the individuals are "controlling corporate official[s]." *Lollo*, 35 F.3d at 33. When making this determination, the court must "examine the officer's actual role in the company's affairs and relationship to the company's wrongdoing." *Id.* Second, the plaintiffs must establish the elements of fraud: (1) a material false representation or omission of existing fact; (2) knowledge of the falsity; (3) intent to defraud; (4) reasonable reliance; and (5) damages. *Id.*, citing, *Diduck v.*

*Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir.1992).

■■■ Applying this standard, the Court grants the Funds' motion with respect to the liability of the individual defendants. Ferraioli and Defilippis are clearly controlling corporate officials. Defillipis was responsible for completing the remittance reports and Ferraioli was responsible for managing labor relations for all three companies. Accordingly, in the Court's view, the first requirement for individual liability is satisfied.

■■■ The Funds have also presented sufficient evidence of fraud on the part of the individual defendants. According to the plaintiffs, Defillipis upon the advice of her husband Ferraioli, knowingly underreported hours worked by employees in covered employment in order to avoid paying the contractually required benefits contributions. Further, the Funds have shown that the same employees were paid by all three companies in an effort to disguise the amount of money due. In the Court's view, this evidence is sufficient to demonstrate fraud as a matter of law.

In reaching this conclusion, the Court again notes that a question of fact as to this issue may have been raised by affidavits submitted in opposition to the Funds' motion as to who Defillipis relied upon in filling out the remittance reports. However, the use of affidavits by Ferraioli and Defillipis to create an issue of fact has been precluded because of their lengthy and deliberate abuse of the discovery process. Accordingly, the Court grants the plaintiffs' motion for summary judgment with regard to the liability of the individual defendants.

#### 5. *Damages*

Having found that all of the defendants are liable for the payment of contributions under the collective bargaining and trust agreements, and that the corporate defendants are jointly and severally liable, the Court now turns to the Funds' request for damages and attorneys' fees. The Funds base their application on estimates they assert are reasonable in accordance with the standards set forth by the Eleventh Circuit in *Combs v.*

*King,* 764 F.2d 818 (11th Cir.1985). *Combs* provides for a burden shifting approach requiring that where the Funds demonstrate a reasonable inference as to the extent of work performed and the amount owed in terms of delinquent contributions, the burden shifts to the employer to come forward with record evidence to refute the inference. *Id.* at 825–27. The reasoning set forth in *Combs* has been adopted by the Sixth and Ninth Circuits. *See Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.,* 30 F.3d 692, 695–96 (6th Cir.1994) (adopting burden shifting approach during trial); *Brick Masons Pension Trust v. Industrial Fence & Supply,* 839 F.2d 1333, 1337–38 (9th Cir. 1988) (same). However, at least one Circuit Court has been reluctant to apply this standard in a summary judgment context. *See Illinois Conference of Teamsters v. Steve Gilbert Trucking,* 71 F.3d 1361, 1367 (7th Cir. 1995). Although the Second Circuit has recently cited Combs with approval, *see Jaspan v. Glover Bottled Gas Corp.,* 80 F.3d 38, 41 n. 3 (2d Cir.1996), the issue presented in this case has not yet been addressed by the Second Circuit.

Ferraioli and Defilippis contest the amount of the damages. Even if the Court were willing to apply the burden shifting approach set forth in *Combs,* the Court is unable to fix the amount of damages at this time. *See Gilbert Trucking,* 71 F.3d at 1367. Rather, the Court finds that the better approach is, with the consent of the parties, to refer the matter of damages to United States Magistrate Judge Viktor V. Pohorelsky to hold a hearing, at which time the defendants can fully contest the amount, and issue a report and recommendation as to the proper amount of the damages and attorney's fees.

### III. *Conclusion*

Having reviewed the parties' submissions, as well as the Court file, it is hereby

ORDERED, that the plaintiffs' motion for summary judgment is granted with respect to the issue of liability against the corporate defendants and the individual defendants, and such liability is determined; it is further

ORDERED, that the plaintiffs' motion for summary judgment with respect to damages

and attorney's fees is referred to United States Magistrate Judge Viktor V. Pohorelsky to issue a report and recommendation, with the consent of the parties, as to the proper amount of damages and attorneys' fees.

SO ORDERED.