**Michael H. WALKER, Plaintiff,**

v.

**Stanley KUBICZ, Physician Assistant, et al., Defendants.**

**No. 95 CIV. 1200(LAK).**

United States District Court,
S.D. New York.

March 16, 1998.

Roderick W. Chin, Juan C. Ordóñez, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York, NY, for Plaintiff.

Wendy Schwartz, Assistant United States Attorney, Mary Jo White, United States Attorney, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Michael H. Walker, a federal prisoner, suffers from end-stage renal failure and requires ongoing dialysis treatment. He claims that the defendants[1] showed deliberate indifference to his medical needs during his incarceration at FCI–Otisville by exhibiting "a pattern and practice" of shortening or delaying his dialysis treatments and by failing promptly to diagnose and treat his case of pneumonia. He brings this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*[2] claiming that the defendants violated his Eighth Amendment rights by failing to provide adequate medical care.[3]

The defendants move to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to FED. R. CIV. P. 56. They contend that Walker has not shown either that he had any serious unmet medical needs or that any defendant was deliberately indifferent to such needs. Defendants argue, moreover, that each is qualifiedly immune because Walker has failed to show that he or she knowingly violated a clearly established Eighth Amendment right. Walker disputes these assertions and requests a continuance of the motion pursuant to FED. R. CIV. P. 56(f) until defendants comply with additional discovery.

---

1. The individual defendants include: Stanley Kubicz, a physician's assistant in the Health Services Unit ("HSU") at the Federal Correctional Institute at Otisville ("FCI–Otisville"); Donald Moore, the administrator of the HSU; Dr. Kallidaik Sundaram, the clinical director at FCI–Otisville; Frank Sizer, the former warden at FCI–Otisville; Philip Spears, the current warden at FCI–Otisville; Kenneth Moritsugu, the assistant director of the Health Services Division at the Federal Bureau of Prisons ("BOP"); and Kathleen Hawk, the director of the BOP.

2. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

3. Walker asserted a claim under the Federal Tort Claims Act arising from these same incidents. It was dismissed voluntarily.

Because the Court relies on matters outside the pleadings, this motion is treated as one for summary judgment. For the reasons discussed below, defendants' motion is granted.

### Discussion

The Eighth Amendment prohibition against the infliction of cruel and unusual punishments applies to prison officials in providing medical care to inmates.[4] In order to state a sufficient Eighth Amendment claim based on inadequate medical care, the plaintiff must make both an objective and a subjective showing as described by the Supreme Court in *Farmer v. Brennan*.[5] "Objectively, the alleged deprivation must be 'sufficiently serious' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists."[6] As for the subjective showing, the plaintiff must demonstrate that the prison official acted with a "sufficiently culpable state of mind."[7] This latter requirement involves proof both that the prison official was aware of facts from which he or she could have inferred that a substantial risk of serious harm existed and that the official in fact drew the inference.[8] Mere disagreement with prison officials about what constitutes appropriate medical care does not make out a cognizable Eighth Amendment claim.[9]

The burden of establishing that no genuine issue of material fact exists rests with the defendants, the moving parties.[10] "The defendants' burden 'will be satisfied if [they] can point to an absence of evidence to support an essential element of the nonmoving party's claim.'"[11] If the defendants meet their burden, then the plaintiff must point to specific facts which demonstrate that there is a genuine issue for trial.[12] All evidence must be viewed in the light most favorable to the plaintiff, the non-moving party, and all reasonable inferences must be drawn in his favor.[13]

### Dialysis Claims Against Defendants Dr. Sundaram, Moore, Sizer and Spears

There is no dispute that plaintiff suffers from end-stage renal failure and pericardial effusion, that he must receive regular dialysis treatment, and that he normally receives dialysis treatment at the Middletown Dialysis Center ("MDC") three times per week for four hours per visit.[14] Plaintiff's claims against Dr. Sundaram, Moore, Sizer and Spears stem from approximately four occasions on which his treatment either was reduced by periods ranging from 15 minutes to one hour or was delayed for a couple of days. According to plaintiff, these reductions and delays caused him extreme pain and discomfort, and defendants ignored and trivialized his complaints and failed to ensure that he receive the proper amount of treatments.[15]

Defendants do not dispute that plaintiff's treatment times vary occasionally. They contend, however, that some variations in treatment are necessary for medical or prison security reasons and, in any event, that such slight variations do not pose an adverse risk to plaintiff's health. The motion is supported principally by a declaration from Dr. Sundaram which states that the MDC staff nephrologist advised him that "the time for

**4.** *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

**5.** 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

**6.** *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996).

**7.** *Id.*

**8.** *Id.* (*quoting Farmer*, 511 U.S. at 837).

**9.** *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).

**10.** *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 36 (2d Cir.1994).

**11.** *Labounty v. Coughlin*, 137 F.3d 68, 70 (2d Cir.1998) (*quoting Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)).

**12.** *Id.*

**13.** *Id.*

**14.** The dialysis is administered at MDC as a consequence of FCI–Otisville being unequipped to handle the treatment.

**15.** Walker Decl. ¶¶ 6–15.

each individual session of dialysis may vary depending on Walker's laboratory results and daily weight" and that "shortened dialysis treatment from time to time and/or an occasional missed treatment will not affect Walker's current condition." [16] It reports also that Dr. Sundaram saw no "significant adverse medical effects that appeared to stem from shortened or missed dialysis treatments" in his own examinations of plaintiff.[17]

Whether defendants have demonstrated the absence of evidence on the first prong of the *Farmer* test—the sufficiently serious and unmet medical need—presents a close question, chiefly because the Sundaram declaration appears to reflect poor drafting. The issue whether the apparently minor variations in the prescribed treatment regime involved a serious medical risk to the plaintiff obviously is a matter calling for expert medical testimony. Had Dr. Sundaram's declaration explicitly stated his professional opinion that the variations did not pose such a risk, the matter would be resolved because there is no competent evidence to the contrary. But his declaration does not explicitly do so. Rather, it quotes the opinion Dr. Sundaram obtained from the MDC staff nephrologist and adds Dr. Sundaram's testimony that his own observations were consistent with that view. Thus, the declaration inferentially asserts that Dr. Sundaram is of the opinion that there was no serious medical risk, but does not say so directly.

■ This is a potentially significant point. The staff nephrologist's opinion, to the extent offered for the truth of the matters asserted, is inadmissible hearsay and therefore not appropriately considered for that purpose on this motion.[18] If Dr. Sundaram's declaration, however, were construed as stating *his* opinion that there was no serious medical risk and that his opinion is based on his own observations and the advice of a qualified specialist, summary judgment would be appropriate on this record.[19] But it is unnecessary to decide whether Dr. Sundaram's declaration, given the requirement that the evidence on this motion be viewed in the light most favorable to the plaintiff, may be so construed because there clearly is no genuine issue of fact with regard to the defendants' state of mind, the second prong of the *Farmer* test.

■ To begin with, Dr. Sundaram's declaration amply demonstrates that he believed that the treatment variations involved no material risk to the plaintiff. While the MDC nephrologist's opinion is inadmissible to prove the truth of the matters asserted, it is admissible for the non-hearsay purpose of demonstrating that a qualified specialist told Dr. Sundaram that there was no serious risk. This advice was confirmed by his own observations, which revealed no ill effects to plaintiff. Indeed, as far as the record discloses, plaintiff complained of alleged ill effects to Dr. Sundaram on only one occasion, reporting only that he was "not feeling well." [20] In consequence no reasonable trier of fact could find that Dr. Sundaram knew of and disregarded any serious medical need that may have existed.

■ Nor is there any issue of fact as to the state of mind of any of the other defendants. While plaintiff complained to defendants of shortened or delayed treatments, he asserted that he suffered ill effects on only one of these occasions and then only that he was "not feeling well" after a reduced treatment.[21] This one complaint, however, was

16. Sundaram Decl. ¶ 6.

17. *Id.*

18. FED. R. CIV. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

19. A qualified expert may testify to an opinion based in part on facts or data that are not themselves admissible in evidence provided that are of a type reasonably relied upon by experts in the field in forming opinions. FED. R. EVID 703. A licensed physician may rely upon the hearsay opinion of a specialist in rendering his own opinion. *See generally* 4 JOSEPH M. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE § 703.05[4], at 703–22 (2d ed.1997).

20. Walker Decl. ¶ 10.

21. Walker Decl. ¶ 9 (written complaint to Moore on February 5, 1995); *id.* ¶ 10 (written and oral complaint to Sizer and Dr. Sundaram); *id.* ¶ 11

insufficient to alert the defendants to any excessive risk to plaintiff's health, especially in light of the uncontroverted evidence that the defendants to whom plaintiff complained believed that slight variations in treatment time occasionally were necessary and did not pose a risk to plaintiff's health. The defendants, moreover, responded to plaintiff's complaints by, among other things, monitoring his health following reduced treatments, checking with the MDC staff and assuring plaintiff that he would receive sufficient dialysis treatment.[22] In consequence, no reasonable juror could conclude that any of the defendants was aware of a sufficiently serious health risk to plaintiff or was deliberately indifferent to such a risk. Summary judgment therefore is granted as to Moore, Sizer and Spears and, insofar as the claim against him rests on the alleged shortened treatments, as to Dr. Sundaram.

### Pneumonia Claims Against Dr. Sundaram and Kubicz

Plaintiff alleges also that Dr. Sundaram and Kubicz failed promptly to treat and diagnose his pneumonia.[23]

Plaintiff visited the HSU on October 16 and told Kubicz that he "was in serious pain, and [experiencing] difficulty breathing and walking." Plaintiff showed Kubicz a cup containing a brown substance which plaintiff said he had spit up. Kubicz examined plaintiff and recorded his temperature as 99.0 degrees, his pulse as 78 and his blood pressure as 160/95. He listened to plaintiff's chest and found the lungs clear, but noted some nasal congestion. Consequently, Kubicz diagnosed possible flu, gave plaintiff Tylenol, and told him to increase fluid intake and to report back to the HSU the next day for evaluation. When plaintiff returned the next day with more serious symptoms, Ku-

bicz again examined plaintiff and then referred him for examination by Dr. Sundaram and another doctor. Dr. Sundaram concluded that plaintiff should be admitted to the hospital and thereafter arranged for plaintiff's transport to Horton Memorial Hospital where he was diagnosed with pneumonia.

Plaintiff's allegation that Kubicz and Dr. Sundaram did not diagnose or treat his pneumonia promptly enough is insufficient to state an Eighth Amendment claim. In fact, the steps that Kubicz and Dr. Sundaram took to evaluate and treat plaintiff were far from evidencing deliberate indifference. Kubicz examined plaintiff and found no signs of serious illness. He made a preliminary diagnosis, prescribed a course of treatment and advised plaintiff to return the next day for further treatment. Once aware that plaintiff's symptoms were serious, Kubicz and Dr. Sundaram promptly sought emergency care. Whatever delay there was in treating plaintiff demonstrates, at most, a claim for negligence.[24] Consequently, summary judgment is granted as to Kubicz and Dr. Sundaram.

### Claims Against Defendants Bureau of Prisons, Hawk and Moritsugu

Although named as a defendant in the caption of the case, the BOP is not included in any factual allegations in the complaint. The amended complaint contains one conclusory allegation involving the BOP, that "[u]pon information and belief, the Bureau of Prisons has adopted a policy or practice that condones limiting Walker's dialysis treatment to less than four hours per session, even though it is aware that Walker's condition requires a minimum of four hours per session."[25] Similarly, the only allegations concerning defendants Hawk and Moritsugu

(written complaint to Spears around November 14, 1995); *id.* ¶ 12 (oral complaints to Moore, Spears and Sizer).

**22.** *See, e.g.,* Def. Ex. M, at 381 (Spears' response to plaintiff's complaint regarding shortened treatment); *id.* at 368 (Sizer and Dr. Sundaram examined plaintiff following shortened treatment and kept him in the HSU–Observation Unit until treatment could be provided the following day).

**23.** Walker Decl. ¶¶ 16–23.

**24.** "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

**25.** Am. Cpt. ¶ 17.

are that plaintiff wrote several letters to inform them of periodic reductions or delays in his dialysis and that they failed to ensure that he received the usual amount.[26] To state an adequate *Bivens* claim, however, the plaintiff must allege "direct and personal responsibility for the purportedly unlawful conduct,"[27] bearing in mind that the doctrine of *respondeat superior* is not available in a *Bivens* action.[28] Because the defendants have shown an absence of evidence supporting a claim against the BOP, Hawk or Moritsugu and the plaintiff has failed to come forward with facts which demonstrate a genuine issue for trial,[29] the complaint is dismissed as to these defendants.

### *Rule 56(f)*

Plaintiff contends that summary judgment should be denied because he has not had an adequate opportunity to conduct discovery. He argues that additional discovery, such as depositions of the defendants, would establish that the alleged incidents posed serious risks to plaintiff's health and that defendants were aware of and deliberately indifferent to those risks.

Plaintiff's position rests on FED. R. CIV. P. 56(f), which provides as follows:

"Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

This Circuit adheres to a four-part test for determining the sufficiency of an affidavit requesting additional discovery in order to respond to a summary judgment motion: "The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful."[30]

Plaintiff already has received his medical records. He has had ample opportunity to consult an expert of his own. He has failed, however, to show how depositions of the defendants reasonably might be expected to yield a genuine issue of material fact. Although plaintiff no doubt would like additional discovery in the hope of impeaching the credibility of the defendants' affiants and to rebut the affiants' statements that they either were not aware of plaintiff's complaints or not personally responsible for patient care or provision of medical care, this is an insufficient basis for a Rule 56(f) continuance.[31]

Nor has plaintiff conducted discovery in a diligent manner. Plaintiff has been represented by a nationally renowned law firm since March 1997. Plaintiff interposed his first document request on August 1, 1997, almost one month after the summary judgment motion was filed. The Court declined to stay discovery despite the filing of the summary judgment motion.[32] But plaintiff sought no other discovery. Indeed, plaintiff

---

**26.** Walker Decl. ¶ 13.

**27.** *Black v. United States,* 534 F.2d 524, 527 (2d Cir.1976).

**28.** *Ellis v. Blum,* 643 F.2d 68, 85 (2d Cir.1981).

**29.** *See Labounty v. Coughlin,* 137 F.3d 68, 70 (2d Cir.1998).

**30.** *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir.1994). *Accord, e.g., Hudson River Sloop Clearwater, Inc. v. Department of the Navy,* 891 F.2d 414, 422 (2d Cir.1989).

**31.** *See, e.g., Goldhirsh Group, Inc. v. Alpert,* 107 F.3d 105, 109 (2d Cir.1997) ("if all of the witnesses deny that an event essential to the plaintiff's case occurred, the plaintiff cannot get to the jury simply because the jury might disbelieve these denials. There must be some affirmative evidence that the event occurred.") (*quoting* 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL 2d § 2527, at 288); *United States v. On Leong Chinese Merchants Ass'n Bldg.,* 918 F.2d 1289, 1294–95 (7th Cir. 1990) (upholding denial of a Rule 56(f) motion where the moving party merely raised "the unlikely possibility that, upon further discovery, an adverse witness may contradict an earlier statement or volunteer an admission").

**32.** Order, Aug. 28, 1997.

did not even move to compel production in response to the August 1 document request. In these circumstances, a continuance for further discovery would be unwarranted.

### Conclusion

Defendants' motion for summary judgment is granted as to all defendants. Plaintiff's request for continuance of the motion pending additional discovery is denied.

SO ORDERED.