# In re ADELPHIA COMMUNICATIONS CORP., et al., Debtors.

### Adelphia Communications Corp., et al., Plaintiffs,

### v.

### John J. Rigas, et al., Defendants.

**Bankruptcy No. 02–41729(REG).**
**Adversary No. 02–08051 (REG).**

United States Bankruptcy Court, S.D. New York.

Dec. 2, 2004.

Boies, Schiller & Flexner LLP, by Phillip C. Korologos, Esq. (argued), Eric Bren-

ner, Esq., William D. Marsillo, Esq., Armonk, NY, by George Carpinello, Esq., Martin Deptula, Esq., Albany, NY, for Plaintiff Adelphia Communications Corp.

Dilworth Paxson, LLP, by Lawrence G. McMichael, Esq. (argued), Penny Conly Ellison, Esq., Christie M. Callahan, Esq., John J. Higson, Esq., Philadelphia, PA, for Defendants John Rigas, Michael Rigas, Timothy Rigas and other Rigas related parties.

Bragar Wexler Eagel & Morgenstern, P.C., by Debra Kramer, Esq., New York, NY, for the Equity Committee.

Kasowitz, Benson, Torres & Friedman LLP, by David M. Friedman, Esq., New York, NY, for the Creditors' Committee.

Mayer, Brown, Rowe & Maw LLP, by Kenneth E. Noble, Esq., Robert J. Ward, Esq., New York, NY, for Bank of Montreal.

*Decision on Motion Under*
*Fed.R.Civ.P. 56(f)*

ROBERT E. GERBER, Bankruptcy Judge.

In this adversary proceeding under the umbrella of a case under chapter 11 of the Bankruptcy Code, in which plaintiff Adelphia Communications has moved for summary judgment on two of its many claims, the Rigas Defendants move, pursuant to Fed.R.Civ.P. 56(f), for an order deferring consideration of Adelphia's now-pending summary judgment motion until the Rigas Defendants can complete a rather exten-

sive array of document and testimonial discovery.[1]

The Rigas Defendants' 56(f) motion requires the Court to decide, as a threshold matter, whether the Rigas Defendants, if they were like any other litigants, could defend themselves without further discovery with respect to the relatively narrow issues on which Adelphia has moved. But it also involves a second issue: whether the Court should accommodate the Rigas Defendants, at Adelphia's expense, in the Rigas Defendants' effort to use other means to prove things that (if true) the Rigas Defendants could say themselves, but for the desire of three of the Rigas Defendants to invoke the Fifth Amendment—all in light of the authority in this Circuit and District with respect to requests of this nature, and the recent denial of the post-trial motions of John and Timothy Rigas for acquittal or a new trial in the criminal case.

For the reasons set forth below, the Court concludes that but for the invocation of the Fifth Amendment by John, Timothy and Michael Rigas, they would be entitled to some, but much less than all, of the discovery that they seek, and the Court will authorize discovery to that extent now. With respect to discovery beyond that, the Court further determines that while it would have deferred consideration of the summary judgment motion until the disposition of the criminal trial motions for acquittal or a new trial, its concerns in that regard have now become moot, and the Fifth Amendment concerns of John and

---

1. The Rigas Defendants seek document discovery and depositions of, at the least, former Adelphia independent directors Erland Kailborne, Pete Metros, Les Gelber and Dennis Coyle; former Adelphia general counsel Randy Fisher; Robert DiBella; Charles Hacker; Adelphia's prior auditors, Deloitte & Touche; representatives of the Co–Borrowing Agent Banks; representatives of Adelphia's prior counsel, Buchanan Ingersoll P.C.; former Adelphia personnel James Brown, Tim Werth, James Helms and "other individuals within Adelphia's accounting and treasury groups." McMichael Declaration, at ¶¶ 41–77; Rigas Defendants' Brief, ECF # 283 in Adversary Proceeding Docket, at 31; Transcript of Nov. 4, 2004 Hearing, at 36–38.

Timothy Rigas are no longer sufficiently material to put this litigation on hold. It comes to a like conclusion with respect to Michael Rigas, though for different reasons. Although the Court considers his Fifth Amendment needs and concerns to be material and continuing, there has been no showing to date that he would be able to provide evidence relevant to the summary judgment motion that John or Timothy Rigas could not.

Thus, upon balancing the needs and concerns, as controlling Second Circuit authority requires, the Court will consider the summary judgment motion after the completion of the discovery discussed below, and John and Timothy Rigas will be free to defend the pending summary judgment motion as they see fit—which of course may include continuing to assert the Fifth Amendment (but with the risk of thereby failing to tell their side of the story), or, alternatively, waiving it (which, so long as it is not done in a "cat and mouse" manner, the Court will permit).

With respect to Michael Rigas, whose Fifth Amendment needs and concerns will be much more serious so long as the Government may be retrying him on the counts for which he was not already acquitted, the Court will permit Adelphia to choose the means that it prefers from several options that, in the Court's exercise of its discretion, would each satisfactorily address Michael Rigas's needs and concerns under the law in this Circuit and District. The Court will accordingly permit Adelphia, after the completion of the discovery that the Court regards as appropriate in any event, to choose from:

(1) a delay in the consideration of its summary judgment motion as to Michael Rigas (only) to await any retrial of criminal proceedings relating to him;

(2) deferring consideration of its claims against Michael Rigas pending a further hearing, at which the Court will consider the extent to which Michael Rigas's ability to defend himself here is impaired by his difficulties in testifying, when the alleged defenses do not appear to be based on anything that he said or did, or anything as to which he would have exclusive knowledge; or

(3) proceeding with consideration of its summary judgment motion against all defendants, but on legal theories, at least with respect to claims against Michael Rigas, that any matters as to which he alone could testify are legally irrelevant—with it being understood that the Court will assume, *arguendo* (and for the purposes of the summary judgment motion only), with respect to the claims against Michael Rigas, that he could prove what he contends discovery would uncover.

The following are the bases for the Court's determination in this regard.

*Facts*

Adelphia brought this adversary proceeding in July 2002, asserting a wide array of claims against the Rigas Defendants. But the determination of the merits of its claims has been slowed by a number of factors, the most significant of which has been the pendency of the criminal charges against John, Timothy and Michael Rigas-and with it, their desire to invoke Fifth Amendment rights and the desire of the U.S. Attorney in this district to avoid subjecting witnesses in the criminal trial to discovery that would not be available in a criminal case. This Court has already denied the Rigas Defendants' 12(b)(6) motion insofar as it concerns all of Adelphia's state law claims, which include, among others, the claims that are the subject of Adelphia's summary judgment motion here. The remainder is *sub judice*.

Several months ago, after a lengthy jury trial before Judge Sand of the district court, the jury returned guilty verdicts against John and Timothy Rigas with respect to the conspiracy, securities, and bank fraud charges against them; the jury returned not guilty verdicts with respect to the remainder. At the conclusion of that same trial, the jury returned not guilty verdicts as to Michael Rigas in connection with several of the charges against him, and reported that it could not agree with respect to the remainder.[2] The Government has announced its intention to retry Michael Rigas on the charges on which the jury could not agree. On November 15, Judge Sand denied post-trial motions on behalf of John and Timothy Rigas for acquittal, or for a new trial.

In an effort to expedite consideration on the merits of its common law claims, Adelphia has moved for summary judgment on two of them—alleging unjust enrichment and requesting a constructive trust—as to which Adelphia contends there are no material disputed issues of fact. Adelphia bases those claims principally on the very substantial sums that found their way to the Rigas Defendants, or to companies the Rigas Defendants own, through Adelphia's cash management system (the "Cash Management System") as a consequence of bank borrowings ("Co-borrowing Agreements") for which Adelphia, along with the Rigas Defendants, is obligated to the co-borrowing banks for repayment. Adelphia summarizes the "central facts" of its motion by stating that the Rigas Defendants used $3.2 billion of Adelphia's money and co-borrowed credit to purchase Adelphia securities, to buy cable assets, and to fund their private company expenses. Adelphia supports its motion with the declaration of Robert J. Di-Bella (which, Adelphia contends, shows the borrowings and their amount, and the manner in which the borrowings found their way to the Rigas Defendants), and with the books and records of Adelphia maintained when the Rigases ran Adelphia (which, Adelphia contends, the Rigases' criminal counsel said were accurate). Adelphia also relies on statements by the defense counsel in the criminal trial, which Adelphia asserts acknowledge that the amounts recorded in Adelphia's books reflect amounts the Rigas Defendants owed and intended to pay back to Adelphia.[3] Based on the foregoing, Adelphia seeks judgment against the Rigas Defendants and entities that they control of that $3.2 billion.

The Rigas Defendants contend that it would be inappropriate to consider the summary judgment motion before they obtain the discovery they seek. Asserting that unjust enrichment claims raise "factual issues not normally subject to summary judgment,"[4] the Rigas Defendants further say that "[a]t the very least, various nuances exist in proving an unjust enrichment claim under the circumstances of this case which demand discovery before the Court can further consider Adelphia's motion."[5] In that connection, the Rigas Defendants identify six areas as to which they contend discovery should be had. They contend that discovery is needed:

(1) "to establish that there was an implied-in-fact agreement between the

---

2. The other defendants in this adversary proceeding, including James Rigas and Ellen Rigas Venetis, have not been criminally charged.

3. Adelphia's Memorandum of Law in Support of its Motion for Partial Summary Judgment, ECF # 247 in Adversary Proceeding Docket, at 2–3.

4. Rigas Defendants' Brief, at 21.

5. *Id.*

Rigas Defendants and Adelphia co-borrowers that precludes any claim for unjust enrichment"[6] with respect to "who was primarily responsible for repayment of the co-borrowing debt to the banks and defining the rights as between Adelphia and the Rigas Defendant co-borrowers";[7]

(2) "to establish that Adelphia benefited from the Cash Management System and the Co–Borrowing Agreements";[8]

(3) "to establish [sic][9] that the Rigas Defendants were on notice that the circumstances are such that the retention of the benefits without payment to Adelphia would be unjust";[10]

(4) "to establish the extent to which Adelphia claims the Rigas Defendants were third-party beneficiaries to the co-borrowing agreements";[11]

(5) "to establish that the Rigas Defendants do not owe Adelphia $3.2 billion";[12] and

(6) to discover the specific *res* upon which Adelphia bases its constructive trust claim.[13]

The extent to which the Rigas Defendants have already had discovery depends in great part on how one characterizes it. There has been some, but not much, discovery under the umbrella of this adversary proceeding.[14] However, the Rigas Defendants have obtained massive discovery by other means. They have received over 10 million pages of documents (though poorly indexed) and tens of thousands of pages of witness statements and trial testimony. They have also received at least the following:

(a) Millions of Adelphia documents that Adelphia also produced to the Government;

(b) Gigabytes of electronic documents and data, including several imaged hard drives, e-mails and electronic access to Adelphia's general ledger;

(c) The 411 page, single-spaced Summary of Investigation prepared by Covington & Burling for the Special Committee of Adelphia's Board of Directors, the appendices thereto, and more than 450 exhibits produced in conjunction therewith;

(d) More than 100 witness memoranda created during the Covington & Burling investigation;

(e) Transcripts from 57 days of testimony by 22 witnesses in the criminal case of United States v. Rigas;

(f) Thousands of Government exhibits, said by Adelphia to be central to the Rigases' conduct at issue in the criminal case;

(g) More than 1 million pages of documents from the files of Buchanan Ingersoll, Adelphia's former outside counsel;

(h) Deloitte & Touche's entire document production to the SEC;

---

6. *Id.*

7. *Id.*

8. *Id.* at 22.

9. The Rigas Defendants may mean "dispute" rather than "establish."

10. *Id.* at 25.

11. *Id.* at 28.

12. *Id.* at 30.

13. *Id.* at 32.

14. Transcript of Nov. 4, 2004 Hearing, at 10 (Argument by Mr. McMichael). Also, long ago, this Court authorized the Rigas Defendants to depose Charles Hacker, upon whose affidavit Adelphia sought and obtained a TRO preventing dissipation of Rigas assets. To date, the Rigas Defendants have not availed themselves of this opportunity.

(i) All of the Board minutes and related materials that were in Adelphia's files; and

(j) Material produced by the Government under 18 U.S.C. § 3500 in the criminal case.

Additionally, of course, the Rigas Defendants have substantial knowledge of Adelphia and its affairs by reason of their operation and control of Adelphia during the period in question.

Then, and importantly, the Rigas Defendants expressly[15] and impliedly contend that they need more discovery than they otherwise might need because John, Timothy and Michael Rigas wish to continue to continue to assert the Fifth Amendment, which they have asserted to date, and thus need to seek out other witnesses to say things that, if true, John, Timothy and Michael Rigas presumably could say themselves.

## Discussion

■ Fed.R.Civ.P. 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the partys opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Parsing that language, it is plain that the party opposing summary judgment must first make the showing that Rule 56(f) requires, and then, if the requisite showing has been made, the court has discretion to determine how to deal with the opposing party's need for discovery—to order a continuance for discovery to be had, or to enter such other order "as is just."

## I.

■ Deciding the Rigas Defendants' Rule 56(f) motion requires this Court first to determine the extent to which it would be appropriate to order the requested continuance for discovery in the absence of Fifth Amendment concerns. In that regard, Adelphia points out that Rule 56(f) requires, as a condition to the Court's entry of a Rule 56(f) order, that the "party cannot ... present ... facts *essential* to justify the party's opposition ...." (emphasis added). That language contrasts with language that might say, for example, in words or substance, that the opposing party cannot present facts that would be *helpful* to a defense of the motion. Thus the desire to impeach the other's affiants is not, by itself, a sufficient basis to grant 56(f) relief.[16]

Both sides cite the Supreme Court's decision in *Celotex Corp. v. Catrett,*[17] but *Celotex* was not a Rule 56(f) case, and ultimately is of only modest significance here. In a different context, the *Celotex* court made a statement on which the Rigas Defendants rely,[18] speaking of Rule 56

---

**15.** Rigas Defendants' Brief, at 16 n. 4.

**16.** *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.,* 701 F.2d 95, 97 (9th Cir.1983) ("[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment."); *Walker v. Kubicz,* 996 F.Supp. 336, 342 (S.D.N.Y.1998) (Kaplan, J.) ("Although plaintiff no doubt would like additional discovery in the hope of

impeaching the credibility of the defendants' affiants and to rebut the affiants' statements ... this is an insufficient basis for a Rule 56(f) continuance.").

**17.** 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**18.** Rigas Defendants' Brief, at 10.

as permitting entry of summary judgment "after adequate time for discovery." [19] But the context in which the quoted words were uttered was one where the non-moving party had the burden of proof, and needed discovery to acquire facts that were not already within her knowledge—neither of which is the case here. And the *Celotex* court further stated that:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." [20]

Delaying the consideration of Adelphia's motion to permit the very broad discovery that the Rigas Defendants seek would materially frustrate that goal.

■ It is of course true that in most cases, summary judgment motions are not considered until discovery has been completed, but here Adelphia has made the decision to seek summary judgment on relatively narrow grounds-as to which, assertedly, there are no material disputed issues of fact, and as to which, assertedly, the desired discovery would be irrelevant. Adelphia may or may not be right in this regard, but having sought summary judgment on that legal premise, it is entitled to a determination from this Court with respect to its legal theory. Since Adelphia will succeed or fail based on that legal theory, and any legally sufficient defenses with respect to it, only such discovery as is relevant to that legal theory is essential to determination of Adelphia's motion.[21] Conversely, to the extent desired discovery is legally irrelevant, it does not warrant Rule 56(f) relief.[22]

The issue, then, is whether the Rigas Defendants have had fair opportunity for discovery on the matters that are the subject of the motion—or, as Rule 56(f) puts it, to "present ... facts essential to justify the partys opposition...."

■ The need for discovery with respect to the matters that are the subject of the summary judgment motion is not the same as the need for discovery with respect to a much broader array of issues that are not yet before the Court. Confusing the two would frustrate the entire purpose of summary judgment—which, as described by the Supreme Court in *Celotex*, is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole ... to secure the just, speedy and inexpensive determination of every action." Adelphia may or may not succeed on its motion, but responding to it does not require discovery on the fully panoply of issues relating to the Rigas Defendants' dealings with Adelphia. Rather, discovery is essential only with respect to those issues relating to whether or not Adelphia can prevail on the legal theory it is advancing.

■ Adelphia has elected to proceed by arguing legal theories of constructive trust

---

19. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

20. *Id.* at 327, 106 S.Ct. 2548.

21. *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir.1994) ("Litigants seeking relief under [Rule 56(f)] must show that the material sought is germane to the defense....").

22. *See Sampson v. The City of Schenectady,* 160 F.Supp.2d 336, 348 n. 16 (N.D.N.Y.2001) ("Because the Court concludes, for reasons explained elsewhere in this Opinion, that [a defendant's] qualified immunity argument fails as a matter of law and his probable cause argument is irrelevant, it will not utilize Federal Rule of Civil Procedure 56(f) to deny Plaintiff's motion for partial summary judgment....").

and unjust enrichment based on the undisputed facts surrounding the co-borrowing facilities and the uses to which the proceeds of the co-borrowings were put, and admissions of counsel in the criminal case. Whether summary judgment can be granted on this theory is yet to be decided, but with modest exceptions, discussed below, that presents issues of law, rather than fact. Similarly, whether additional defenses the Rigas Defendants wish to assert— the focus of three of the six areas for desired discovery listed above [23]—provide a defense to Adelphia's claims likewise presents issues of law.[24] And putting aside, temporarily, any Fifth Amendment concerns, discovery on behalf of the Rigas Defendants with respect to Issue # 1,[25] Issue # 2,[26] and Issue # 3 [27] is hardly essential, because to the extent any of the Rigas Defendants' assertions were true, one or more of the Rigas Defendants would already have knowledge of it and could speak to it. Indeed, since the Court does not decide disputed issues of fact on a motion for summary judgment, but instead determines simply whether material disputed issues of fact exist, a single affiant could put in enough to create an issue of fact (assuming that issue is material), and

there would be no need to seek out and produce multiple witnesses to say the same thing.

■ Rule 56(f) plays an important, and many might say critical, role where summary judgment is sought based on facts uniquely known to the moving party. There, basic fairness requires that the party opposing summary judgment have access to facts that might be relevant to the merits and that the nonmoving party otherwise might not know or be able to present. In that kind of situation, it is plain that "the party cannot ... present ... facts essential to justify the partys opposition," squarely meeting Rule 56(f)s requirements. But with respect to Issues # 1, # 2 and # 3, the circumstances are different. The facts are not uniquely known to Adelphia. To the contrary, the Rigas Defendants were the actors with respect to the challenged acts, and were parties to the agreement(s) they allege to exist. To the extent that things the Rigas Defendants did, or agreements they entered into, provide substantive defenses, they already have the ability to put those things forward.[28]

---

23. Issues # 1, # 2, and # 3.

24. Issues # 4 and # 6, relating to Adelphia's *contentions,* should be clear by the time briefing is completed.

25. Whether the Rigas Defendants had an agreement with Adelphia with respect to repayment on the Co-borrowing Agreements.

26. Whether Adelphia benefited from the Cash Management System and the Co-borrowing Agreements.

27. Whether the Rigas Defendants were on notice.

28. *See Mason Tenders Dist. Council Pension Fund v. Messera,* 958 F.Supp. 869, 894 (S.D.N.Y.1997) (Sweet, J.) (*"Messera"*) ("Relief under Rule 56(f) is not appropriate where

the discovery allegedly desired 'pertain[s] to information already available to [the nonmoving party].' ") (quoting *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54, 66 (S.D.N.Y. 1996)). Addressing a situation quite similar to the one presented here, the *Messera* court observed:

> The Funds' central allegation is that they had a contractual relationship with the Albanese Defendants at the time of the subject real estate transactions; they should be able to demonstrate as much through their own witnesses and documents. Their failure to do so confirms that no evidence of an attorney-client relationship existed between the parties, and militates against their request for a [Rule 56(f)] continuance.

958 F.Supp. at 894–95. *See also Paul Kadair, Inc. v. Sony Corp.,* 694 F.2d 1017, 1032 (5th Cir.1983), *quoted in Messera* (request for stay

■ With respect to Issue # 5—the amount owed (if any) and by whom—the circumstances are different. There, but only there, the issues are not solely of law or already within the knowledge of one or more of the Rigas Defendants. Facts relevant to the actual amount owed, and/or which (if any) of the Rigas Defendants owes such amount, are areas as to which there is unequal access to information—especially since the Rigas Defendants no longer have access to many of Adelphia's documents and cannot access them in a meaningful way, and because even as managers of Adelphia's affairs, it is unlikely that they would have access to information at that level of detail.

■ The Rigas Defendants are entitled to the production of documents in a way by which they can work with them. Though the Rigas Defendants have millions of pages of documents in electronic form, they do not have the documents in a way that segregates them by subject matter or the file from which they came, nor do they have the ability to search them. By production the old-fashioned way (to document demands reasonably related to the pending motion) or otherwise, Adelphia must address that deficiency. The Court further believes that the Rigas Defendants should be permitted to depose Robert Di-Bella (who executed the declaration upon which Adelphia's claims rest, tracing the funds, and who supports the amount claimed), and that they should also be able to depose Charles Hacker, whose computations, the Rigas Defendants claim, are inconsistent with DiBella's.[29] However, given the Rigas Defendants' knowledge of what happened during their tenure,[30] providing discovery only to the extent just stated is sufficient—subject to the Fifth Amendment concerns of John, Timothy and Michael Rigas, discussed below.

*II.*

The Court then turns to the Fifth Amendment concerns of John, Timothy and Michael Rigas, and the extent to which the Court should give them discovery to find others who might support their factual contentions when, by reason of Fifth Amendment concerns, they prefer not to execute affidavits themselves.

■ The Second Circuit has discussed at some length the competing considerations in this area, and the ways by which the lower courts should address them.[31] As it has observed, while the Fifth Amendment states only that "[n]o person ... shall be compelled in any criminal case to be a witness against himself,"[32] there is no question that an individual is entitled to invoke the privilege against self-incrimination during a civil proceeding.[33] And this means that a civil litigant

---

under Rule 56(f) denied because "evidence in refutation of [movant's] averments and in support of [the opposing party's] conspiracy claim was available to [the opposing party] if its allegations of conspiracy were true.").

**29.** As noted above, the Court has already authorized the taking of Hacker's testimony. *See supra* note 14.

**30.** For these reasons, the Court cannot agree with the Rigas Defendants' point that Adelphia is depriving them of "any facts to litigate." *See* Transcript of Nov. 4, 2004 Hearing, at 7.

**31.** *See United States v. Certain Real Property and Premises Known As: 4003–4005 5th Ave., Brooklyn, N.Y.,* 55 F.3d 78, 83 (2d Cir.1995) ("*Certain Real Property* ").

**32.** U.S. Const. amend. V.

**33.** *Certain Real Property,* 55 F.3d at 82 (citing *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), which explains that the Fifth Amendment permits an individual "not to answer official questions put to him in any ... proceeding, civil or criminal, formal or informal, where the answer might incriminate him.").

may legitimately use the Fifth Amendment to avoid having to answer inquiries during any phase of the discovery process.[34]

■■■ Because litigants do not have a right to discovery of privileged matters, such litigants, even if deprived of key facts through an opposing party's assertion of the Fifth Amendment, often have no recourse in the civil litigation other than to comment upon the claim of privilege in the hope of persuading the trier of fact to draw a negative inference.[35] At the same time, however—and as is highly relevant to the pending motion for summary judgment—an invocation of the Fifth Amendment "is not a substitute for relevant evidence," and a litigant claiming the privilege is not "freed from adducing proof in support of a burden which would otherwise have been his." [36]

■■■ In other words, a "party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence," [37] and the claim of privilege will not prevent an adverse finding or even

summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation.[38] Thus, though a litigant in a civil action is entitled to avoid answering questions that might lead to self-incrimination, this entitlement often conflicts with the litigant's interest in testifying and obtaining whatever benefits such testimony might provide.[39] This case is a classic example of that principle. Because a party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence, the claim of privilege will not prevent summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation.[40]

■■■ In *Certain Real Property*, the Second Circuit discussed other relevant considerations. It observed, in this connection:

[B]ecause *all* parties—those who invoke the Fifth Amendment and those who oppose them-should be afforded every

---

34. *Id.* (citing 8 Charles A. Wright, Arthur R. Miller and Richard L. Marcus, *Federal Practice and Procedure* § 2018, at 273 (2d ed. 1994) (*"Federal Practice "*)).

35. *Id.* at 82–83.

36. *Id.* at 83 (quoting *United States v. Rylander*, 460 U.S. 752, 758, 761, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983)). *See also SEC v. Cavanagh*, 2004 WL 1594818, at *13 (S.D.N.Y. July 16, 2004) (Cote, J.) (*"Cavanagh "*) (discussing *Certain Real Property* ).

37. *Certain Real Property*, 55 F.3d at 83 (quoting *United States v. Taylor*, 975 F.2d 402, 404 (7th Cir.1992)).

38. *Id.* (citing *Federal Practice* § 2018, at 288, which indicates that "[i]n some cases if a party claims the privilege and does not give his or her own evidence there will be nothing to support his or her view of the case and an adverse finding or even a directed verdict or grant of summary judgment will be proper.").

39. *Id.*

40. *Cavanagh*, 2004 WL 1594818, at *13 (quoting and applying *Certain Real Property* ), and at *32 (granting the SEC's motion for summary judgment against parties who had asserted the Fifth Amendment); *see also SEC v. Softpoint, Inc.*, 958 F.Supp. 846, 859 (S.D.N.Y.1997) (Sotomayor, J.) (*"Softpoint "*); *SEC v. Global Telecom Services L.L.C.*, 325 F.Supp.2d 94, 108–11 (D.Conn.2004) (Dorsey, J.); *SEC v. Chester Holdings, Ltd.*, 41 F.Supp.2d 505, 515–18 (D.N.J.1999) (Barry, J.); *Centennial Life Ins. Co. v. Nappi*, 956 F.Supp. 222, 228–29 (N.D.N.Y.1997) (Hurd, J.); *Bourgal v. Robco Contracting Enters., Ltd.*, 969 F.Supp. 854, 862 (E.D.N.Y.1997) (Spatt, J.) (all considering, and granting, summary judgment in cases where the non-moving party had asserted the Fifth Amendment privilege).

reasonable opportunity to litigate a civil case fully and because exercise of Fifth Amendment rights should not be made unnecessarily costly, courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege. Thus, if there is a timely request made to the court, the court should explore all possible measures in order to select that means which strikes a fair balance ... and ... accommodates both parties.[41]

▰ The striking of that balance is a matter within the discretion of the trial court,[42] and "necessarily depends on the precise facts and circumstances of each case."[43] But the Second Circuit has articulated factors that the trial courts should consider in striking the necessary balance. It has stated that the trial court "should give due consideration to the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties."[44] The Court considers those factors in turn.

*Nature of the Proceeding*

This civil action has been brought by a private litigant, not by the Government, and thus there is no basis for a fear that the Government might be trying to use its criminal prosecution power for leverage in

achieving civil gains.[45] Rather, Adelphia, on behalf of its stakeholders, is seeking recompense for the alleged abuse of trust and damage to Adelphia, and to recover gains the Rigases allegedly acquired at the expense of Adelphia's other stakeholders. Because of the nature of the claims Adelphia is prosecuting, because Adelphia has so many stakeholders, and because of the legitimate interest of the public and regulatory authorities in the outcome of this litigation, there is a substantial public interest in the determination of the merits of this litigation as expeditiously, and as economically, as is consistent with justice.[46]

*How and When the Privilege Was Invoked*

Each of John, Timothy and Michael Rigas invoked the privilege on the civil side when criminal action against him was real and non-speculative, and has continued to invoke it after his indictment and a lengthy criminal trial.

Michael Rigas continues to invoke the Fifth Amendment privilege. Although he was acquitted of some charges and the jury failed to reach a verdict as to others, the Government has announced its intention to retry him on some of the counts on which the jury could not agree.[47] His continuing Fifth Amendment needs and concerns have not been exaggerated, and deserve to be accommodated to the extent possible.

**41.** *Certain Real Property*, 55 F.3d at 83–84 (citations and internal quotations omitted; emphasis in original).

**42.** *Id.* at 85("But as long as a trial court considers the relevant factors and acts with moderation to accommodate both a litigant's valid Fifth Amendment interests and the opposing parties' needs in having the litigation conducted fairly, we will not disturb the measures used by that court in the exercise of its discretion.").

**43.** *Id.*

**44.** *Id.* at 84 (citation omitted).

**45.** *See Sterling Nat'l Bank v. A–1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573, 575 (S.D.N.Y.2001) (Lynch, J.) ("*A–1 Hotels*").

**46.** *Id.* at 580 (the interests of non-parties and the public can favor prompt resolution of a civil case, as the public interest in institutions promptly recovering allegedly misappropriated funds is significant).

**47.** The Government acquiesced in the dismissal of others.

John and Timothy Rigas have continued to assert the Fifth Amendment on the civil side since the time of entry of jury verdicts against them, and since the time Judge Sand denied their motions for acquittal and for a new trial. With the denial of their motions, it is reasonable to expect that judgments of conviction will be entered in the near future. Each will likely appeal, and one possible outcome of such appeals would presumably be a new trial. But at this juncture, the criminal proceedings at which their statements could be used against them have already been concluded.

*Potential for Harm or Prejudice to Opposing Parties*

Here, on the civil side, Adelphia is not trying to make its case out of any of the Rigas Defendants' mouths; it is content to rely on its own evidence. Adelphia offers John, Timothy, and Michael Rigas the opportunity to speak to defend themselves, but does not seek to obligate them to do so. None of John, Timothy or Michael Rigas has as yet sought to withdraw his invocation of the Fifth Amendment privilege in this civil proceeding, though the Court will permit any of them to do so if he desires—so long as each recognizes that the Court will not permit the waiver of the privilege on a selective basis, or for "cat and mouse" games that have been justifiably criticized in other cases.[48]

The potential of harm to Michael Rigas, so long as the Government threatens to retry him, is real, and more than minimal. However, the potential of harm to John Rigas and Timothy Rigas is materially less. As noted, the criminal proceedings at which their statements could be used against them have already been concluded, and their statements could be used against them in future criminal proceedings only if there is another criminal trial, which presumably could take place only if their convictions are reversed on appeal and the Second Circuit remands for a new trial. That is possible, but this Court is hardly equipped to express a view on the outcome of their appeals, and does not believe that it can or should find that a reversal and remand is likely. At the least, the situation is very different than it would be if an indictment were pending, or a trial were scheduled or ongoing.

Adelphia has been prejudiced by the invocations of the Fifth Amendment, and the Court's efforts to accommodate them. As the Second Circuit noted in *Certain Real Property*:

> Though constitutionally protected, a civil litigant's invocation of the privilege against self-incrimination during the discovery process is far from costless. It will, for example, always disadvantage opposing parties—at least to some extent—since it keeps them from obtaining information they could otherwise get.[49]

Indeed, given the Rigas Defendants' active participation in the matters at issue in this action, it is at least possible that Adelphia would benefit from discovery from the Rigas Defendants far more than they would benefit from discovery from Adelphia.

---

48. *See Softpoint,* 958 F.Supp. at 857 ("By asserting and waiving privilege when convenient, Stoecklein has engaged in the type of conduct that the Second Circuit described as 'a manipulative 'cat and mouse' approach to the litigation'—the type of conduct that warrants barring a defendant's testimony in opposition to summary judgment.") (quoting *Certain Real Property,* 55 F.3d at 85). *See also*

*Glimcher Props. Ltd. P'ship v. NJMM, LLC,* 2000 WL 1738415, at *3 (S.D.N.Y. Nov.21, 2000) (Martin, J.); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk Inc.,* 914 F.Supp. 895, 900 (E.D.N.Y.1996) (Glasser, J.).

49. *Certain Real Property,* 55 F.3d at 82.

As importantly, while some delay in the determination of its claims is inevitable, Adelphia would be prejudiced by further delay in the ability to prosecute its claims by reason of a desire to address Rigas Defendant Fifth Amendment concerns. By reason of the amalgam of their invocation of the Fifth Amendment, and the Government's desire to protect its trial witnesses from discovery available in civil cases but unavailable in criminal cases, this adversary proceeding is already over two years old. Several courts have recognized that delay in the ability to secure a legal determination on one's claims constitutes legally cognizable prejudice in this context.[50]

Finally, Adelphia is one of many entities that have commenced litigation against the Rigas Defendants, or some subset of them. The claims against the Rigases exceed, by many billions of dollars, the amount they could afford to pay, and Adelphia is, in a practical sense, in a race with those other litigants to establish the legitimacy of pending claims. Under these circumstances, Adelphia would be prejudiced even more than the typical litigant by delay in consideration of the validity of its claims.

*The Balancing*

As noted in *A-1 Hotels*, parties who face both civil litigation and criminal investigation face difficult choices.[51] But at the same time:

> [P]arties who claim to have been victimized by frauds or other crimes are entitled to pursue their civil remedies, and it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities.[52]

Such slower justice would result by reason of the broad range of discovery that the Rigas Defendants desire as a substitute for simply putting in their own affidavits setting forth their own account of the facts, which could quickly and easily raise issues of fact to the extent that they are legally relevant.

Throughout the time that criminal proceedings were threatened and the criminal trial was ongoing, and throughout the time that post-trial motions were pending, this Court has leaned over backward to minimize prejudice to John and Timothy Rigas (along with Michael Rigas) as a consequence of their invocation of their Fifth Amendment rights. However, with the passage of time and developments in the criminal case—first the guilty verdicts

---

50. *See id.* at 86 ("[G]iven the lengthy delay Tapia–Ortiz precipitated, and the timing of his attempt to withdraw his prior assertion of the Fifth Amendment, the Court in this case could reasonably presume prejudice to the Government from the manner in which he had utilized the privilege. As courts and commentators have noted, opposing parties will frequently suffer prejudice (at the very least from increased costs and delays) when a litigant relies on the Fifth Amendment during discovery and then decides to waive the privilege much later in the proceeding."); *A-1 Hotels*, 175 F.Supp.2d at 575, 579–80 (commenting on prejudice from delay, in a case that had been delayed for eight months, and

denying a stay of the case, in part for that reason).

51. *A-1 Hotels*, 175 F.Supp.2d at 575.

52. *Id.* (footnote omitted). In the footnote, Judge Lynch quoted Judge Weinfeld's observation in *Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F.Supp. 1118, 1119 (S.D.N.Y.1980):

> That defendant's conduct also resulted in a criminal charge against him should not be availed of by him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim.

against John and Timothy Rigas and then the denial of their post-trial motions—the bases for the accommodations on the civil side with which this Court has provided John and Timothy Rigas have materially decreased. The concerns of Adelphia and its stakeholders now outweigh them.

At this relatively early stage in the litigation, the Court will permit any of John, Timothy or Michael Rigas to withdraw his invocation of the Fifth Amendment in this action, and it will not, at least at this juncture, and in this summary judgment procedural context, draw an adverse inference in the event that any of them elects to continue to assert his Fifth Amendment rights. Nor will it now enter a preclusion order of any kind,[53] or, of course, any kind of judgment on default. Thus, to the maximum extent appropriate, the Court will minimize the barriers to the Rigas Defendants' ability to defend themselves. But at least insofar as the pending summary judgment motion is concerned, no additional accommodations are necessary, or will be made, with respect to John and Timothy Rigas. The Court will not free them from the duty to "present sufficient evidence to satisfy the usual evidentiary burdens in the litigation."[54] Nor will the Court make Adelphia go through lengthy and costly discovery to accommodate the desire of John and Timothy Rigas to find others who might say what John and Timothy Rigas prefer not to say themselves. Under the caselaw in this Circuit and District, such is not required, and it would be unduly prejudicial to Adelphia.

With respect to Michael Rigas, whose Fifth Amendment concerns deserve greater accommodation by reason of the Government's announced desire to retry him, this Court will offer additional measures as part of the balancing that the Second Circuit requires. The Court will permit Adelphia, after the completion of the discovery that the Court regards as appropriate in any event, to choose from:

(1) a delay in the consideration of its summary judgment motion as to Michael Rigas (alone) to await the determination of the remaining criminal proceedings relating to him;

(2) deferring consideration of its claims against Michael Rigas pending a further hearing, at which the Court will consider the extent to which Michael Rigas's ability to defend himself here is impaired by his difficulties in testifying, when the alleged defenses that the Rigas Defendants describe do not appear to be based on anything Michael Rigas said or did, or anything as to which he would have exclusive knowledge; or

(3) proceeding with consideration of its summary judgment motion against all defendants, but on legal theories, at least with respect to claims against Michael Rigas, that any matters as to which he alone could testify are legally irrelevant—with it being understood that the Court will assume, *arguendo* (and for the purposes of the summary judgment motion only), with respect to the claims against Michael Rigas, that he could prove what he contends discovery would uncover.

Now, after the determination by Judge Sand of the post-trial motions in the criminal case, the litigation of this action can and should move forward. The parties are to confer and if possible agree upon mea-

---

**53.** *But see Certain Real Property,* 55 F.3d at 86 (holding that the district court acted well within its discretion when it entered a preclusion order, barring submission of evidence concerning matters that the defendant had previously shielded from discovery through his invocation of the Fifth Amendment).

**54.** *See Cavanagh,* 2004 WL 1594818, at *13.

sures to complete the discovery authorized under this decision, and to complete any supplemental briefing appropriate to bring on Adelphia's summary judgment motion for determination.

SO ORDERED.